MANATT, PHELPS & PHILLIPS, LLP
SIRENA P. CASTILLO (Bar No. CA 260565)
E-mail: SCastillo@Manatt.com
PATRICE RUANE (Bar No. CA 347128)
E-mail: PRuane@Manatt.com
2049 Century Park East, Suite 1700
Los Angeles, California 90067
Telephone: 310.312.4000
Facsimile: 310.312.4224

Attorneys for *Plaintiff*
ALI KIA

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALI KIA,<br><br>           Plaintiff,<br><br>   v.<br><br>UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES (USCIS); ALEJANDRO MAYORKAS, Secretary, Department of Homeland Security; UR M. JADDOU, Director, USCIS; TED H. KIM, Associate Director, Refugee, Asylum and International Operations, USCIS; MATTHEW D. EMRICH, Associate Director, Fraud Detection and National Security Directorate, USCIS; and DAVID M. RADEL, Director, Los Angeles Asylum Office, USCIS,<br><br>           Defendants. | Case No. 8:24-cv-00286<br><br>COMPLAINT FOR MANDAMUS AND DECLARATORY JUDGMENT |

Plaintiff Ali Kia ("Kia") alleges the following against defendants U.S. Citizenship and Immigration Services ("USCIS"); Alejandro Mayorkas, Secretary, Department Of Homeland Security ("Mayorkas"); Ur M. Jaddou, Director, USCIS ("Jaddou"); Ted H. Kim, Associate Director, Refugee, Asylum and International Operations, USCIS ("Kim"); Matthew D. Emrich, Associate Director, Fraud Detection and National Security Directorate, USCIS ("Emrich"); and David M. Radel, Director, Los Angeles Asylum Office, USCIS ("Radel") (collectively, "Defendants").

## INTRODUCTION

1. This mandamus action seeks to compel Defendants and those acting under them to take all appropriate action to adjudicate Kia's Application for Asylum and for Withholding of Removal ("Asylum Application"). This action also seeks a judgment declaring that Plaintiff's rights have been violated by Defendants' failure to adjudicate his petition.

2. Kia came to the United States to escape religious persecution and obtain asylum. In Iran, he lived in fear that his Christian faith would be discovered, and now he lives in constant fear of being sent back to Iran. He simply wants to live in a place where he can openly practice his religion and participate as an active member of his religious community.

3. Kia is not hiding in this country. Kia lawfully and timely presented his meritorious claim for asylum to the USCIS, filing his I-589 Asylum Application which was received by USCS on November 6, 2015. However, in the *ninety-nine months* since then, USCIS has failed to comply with its duty to adjudicate his claim. *See* Immigration and Nationality Act ("INA"), § 208(a), 8 U.S.C. § 1158(a). Instead, Kia has waited more than eight years without USCIS adjudicating his Asylum Application or even scheduling an asylum interview. It is unclear when, if ever, his application will be adjudicated.

4. Under policies USCIS enacted in January 2018,[1] USCIS placed Kia's Asylum Application in de facto indefinite suspension and may never adjudicate it. Defendants are now reviewing new applications for asylum on a "last-in first-out" ("LIFO") basis, but because there are more new applications every month than cases being adjudicated by Defendants, those in the backlog—like Kia—may never receive a decision. Defendants have, therefore, violated their non-discretionary, statutory duty to schedule an asylum interview for Kia and adjudicate his Asylum Application.

5. USCIS's inaction has left Kia in legal limbo, suffering uncertainty and an inability to settle into a stable and secure life.

6. To be clear, this case is not about changing Defendants' priorities or schedules, or about requesting that they devote more resources to adjudicating asylum claims. Instead, this case is about Defendants' wholesale abandonment of their statutory duty to adjudicate Kia's application for asylum as part of an arbitrarily selected group of individuals, which Defendants are not lawfully permitted to do.

## JURISDICTION

7. This Court has subject matter jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. § 1361 because Kia asks this Court to compel Defendants, officers of the United States, to perform their duties owed under INA § 208(d)(5)(A)(ii)-(iii), 8 U.S.C. § 1158(d)(5)(A)(ii)-(iii). Subject matter jurisdiction is further conferred by 8 U.S.C. § 1329 (jurisdiction of the district courts), and 28 U.S.C. §§ 1331 (federal subject matter jurisdiction) and 1651 (jurisdiction to issue writs).

8. Jurisdiction is also conferred on this Court pursuant to 5 U.S.C. § 704 as Kia is aggrieved by adverse agency action which this Court is authorized to remedy under the Administrative Procedures Act, 5 U.S.C. §§ 702 et seq. 5 U.S.C. § 704

---

[1] Affirmative Asylum Interview Scheduling, U.S. Citizenship and Immigration Services (updated May 31, 2022), www.uscis.gov/humanitarian/refugees-and-asylum/asylum/affirmative-asylum-interview-scheduling.

(specifying agency actions made subject to judicial review). Further, 5 U.S.C. § 555(b) provides that "[w]ith due regard for the convenience and necessity of the parties or their representatives and *within a reasonable time*, each agency *shall* proceed to conclude a matter presented to it." (emphasis added).

9. The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. §§ 2201, 2202 which authorizes the issuance of declaratory judgments.

10. Kia seeks costs and fees pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. §§ 2412 *et seq*.

## VENUE

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) because this judicial district is (1) where the Defendants, acting through the Los Angeles Asylum Office of USCIS and in their official capacities, have failed to take action as required by law, (2) where Kia resides, and (3) where a substantial part of the events or omissions giving rise to Kia's claim occurred.

## THE PARTIES

12. Kia was born in Iran in 1973 and is a citizen of Iran. He resides in Ladera Ranch, California. Kia submitted an Asylum Application to USCIS, which was received on November 6, 2015.

13. Defendant USCIS assigned Kia's Asylum Application to Los Angeles Asylum Office, which has yet to schedule his interview.

14. Defendant USCIS is an agency of the United States Department of Homeland Security ("DHS") charged with, inter alia, scheduling asylum interviews and adjudicating applications for asylum.

15. Defendant Los Angeles Asylum Office, located at 14101 Myford Road, Tustin, CA 92780, is an office within USCIS and the federal agency with direct authority and responsibility to schedule Kia's asylum interview and adjudicate his Asylum Application.

16. Defendant Mayorkas is the Secretary of DHS and oversees DHS. In his official capacity, he is charged with the administration and enforcement of the INA, has the authority to determine the refugee status of applicants pursuant to 8 U.S.C. § 1158(b)(1)(A), and is authorized to delegate such powers and authority to employees of DHS, including those of USCIS. *See* 8 U.S.C. § 1103(a)(1). Defendant Mayorkas is named in this Complaint in his official capacity.

17. Defendant Jaddou is the Director of USCIS, the agency charged with scheduling Plaintiff's asylum interview and adjudicating Plaintiff's Asylum Application. Defendant Jaddou is named in her official capacity.

18. Defendant Kim is the USCIS Associate Director for Refugee, Asylum and International Operations. He has supervision over all asylum offices, including the Los Angeles Asylum Office. Defendant Kim is named in his official capacity.

19. Defendant Emrich is the USCIS Associate Director of the Fraud Detection and National Security Directorate. He has supervision of all USCIS staff who review asylum applications to ensure that immigration benefits are not granted to individuals who pose a threat to national security or public safety, or who seek to defraud the immigration system. Certain applications must be reviewed by the Fraud Detection and National Security Directorate before their final adjudication. Defendant Emrich is named in his official capacity.

20. Defendant Radel is the Director of the Los Angeles Asylum Office, to which Plaintiff's asylum case has been assigned. Defendant Radel is named in his official capacity.

**FACTS AND PROCEDURAL HISTORY**

A. **Defendants Have a Statutory Duty to Process Plaintiff's Asylum Application.**

21. Individuals who fear persecution in their countries of origin can affirmatively seek asylum in the United States. To do so, applicants must submit an Asylum Application to USCIS. After receiving the Asylum Application, USCIS is

responsible for scheduling an asylum interview in order to process the Asylum Application. Under INA 208 § 1158(a), 8 U.S.C. § 1158(a), USCIS has a non-discretionary duty to adjudicate Plaintiff's asylum claim. *Yan v. Dir. of L.A. Asylum Off. for the U.S. Citizenship & Immigr. Servs.*, No. 2:22-cv-05846-ODW, 2023 WL 4053410, at *3 (C.D. Cal. June 16, 2023) (discretion to delay adjudication of asylum interviews "does not negate the discrete and mandatory nature of USCIS's duty to schedule the interview and to adjudicate the application"); *Tailawal v. Mayorkas*, No. LA CV 22-01515-SPG-RAO, 2022 WL 4493725, at *3 (C.D. Cal. Aug. 18, 2022) (same).

22. "[I]n the absence of exceptional circumstances, the initial interview or hearing on the asylum application **shall** commence **not later than 45 days** after the date an application is filed." INA 208 § 1158(d)(5)(A)(ii), 8 U.S.C. § 1158(d)(5)(A)(ii) (emphasis added). Following this interview, USCIS must issue a decision on the application. The relevant statute provides that, "in the absence of exceptional circumstances, final administrative adjudication of the asylum application, not including administrative appeal, shall be completed **within 180 days** after the date an application is filed." INA 208 § 1158(d)(5)(A)(iii), 8 U.S.C. § 1158(d)(5)(A)(iii) (emphasis added).

23. INA 208 § 1158(d)(7), 8 U.S.C. § 1158(d)(7), provides that "[n]othing in this subsection [d] shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person." However, Kia's claim is not based on any provision of INA 208 § 1158(d)(7), 8 U.S.C. § 1158(d)(7). Kia's claim is based on Defendants' non-discretionary obligation under INA 208 § 1158(a), 8 U.S.C. § 1158(a), to adjudicate Kia's application for asylum within a reasonable period of time. Therefore, INA 208 § 1158(d)(7), 8 U.S.C. § 1158(d)(7), does not prevent Kia from bringing this private action against Defendants.

24. As set forth in greater detail below, Plaintiff fears persecution in his home country and has a meritorious claim for asylum. Plaintiff filed the requisite I-589 Asylum Application and has been placed on the Los Angeles Asylum Office's Standby List but, at the time this Complaint was filed, Defendants have not scheduled Plaintiff for an asylum interview despite USCIS's statutory duty to do so without unreasonable delay.

B. **Plaintiff's Meritorious Claim for Asylum and Petitioning History.**

25. Kia was born to a prominent Muslim family in Esfahan, Iran, in 1973. He attended high school and college in Turkey, where he converted to Catholicism. After his Turkish visa expired, he returned to Iran when he was forced to hide his Catholicism, even from close family members, because he feared he would be in danger if anyone found out about his conversion. He outwardly participated in Islamic ceremonies and prayers, which made him more fearful because he worried that people would be able to tell he was feigning Muslim faith, especially because he does not speak Arabic and cannot read the Qur'an.

26. Kia left Iran with his wife and their four-year-old son in 2015 and came to the United States.

27. Upon arriving in Orange County, California, Kia was able to openly practice his faith after years of hiding. He became a member of an evangelical congregation, the Saddleback Church. Saddleback Church has a significant presence in the evangelical community and is well-known, both in California and more broadly online. Kia is currently a leader in the church and volunteers teaching English and leading Bible study groups in Turkish. For many years he wrote a blog, *The Great Journey with God*,[2] and both Kia and his son appear in literature and promotional materials for Saddleback Church.

---

[2] The Great Journey With God, thegreatjourneywithgod.wordpress.com/ (last visited Dec. 9, 2023).

28. As an openly practicing evangelical Christian, Kia would be in danger if he and his family were to return to Iran. In fact, he would be in *more* danger now than in 2015 when he left, because it would be difficult, if not impossible, for him to hide his faith given that evidence of his Christianity, such as his blog and the Saddleback Church literature, are publicly accessible. Kia's active participation in church events brings him great joy and personal fulfillment, but also puts him at risk that his religious activities will come to the attention of the Iranian government, particularly if he is forced to return to Iran.

29. Kia filed his I-589 Asylum Application with USCIS, citing his fear of religious persecution, including arrest, torture and possible execution, upon return to Iran, with his wife and young child included as derivatives to his application. In anticipation of his interview, Kia has prepared and submitted an extensive evidentiary submission to support his application for asylum, including declarations, letters in support, and reports on country conditions.

30. There are no further administrative remedies available to Kia to obtain an asylum interview. Since his original application in 2015, he has submitted at least six letters to USCIS—on December 7, 2016, November 26, 2018, October 6, 2020, February 11, 2021, December 20, 2021, June 3, 2022, and April 10, 2023—requesting information regarding the status of his application because he has not yet been scheduled for an interview.

31. Additionally, on February 11, 2021, Kia filed a request to be added to the Standby List for an Affirmative Asylum Interview with the Los Angeles Asylum Office. In conjunction with this request, Kia filed a supplemental letter brief and exhibits including declarations from Kia and his wife, letters from pastors from Saddleback Church, and excerpts from Kia's blog, *The Great Journey with God*. On May 25, 2021, Kia received confirmation that his name had been added to the Standby List.

32. On or about August 31, 2023, Kia submitted a case assistance request to the Department of Homeland Security's Office of the Citizenship and Immigration Services Ombudsman ("CIS Ombudsman") regarding USCIS's failure to schedule an interview. He received a response on October 23, 2023, stating that his request had been received and because his case falls under USCIS's third priority for scheduling asylum interview, the CIS Ombudsman "office will therefore close this request for case assistance."

33. Therefore, Kia's application has been pending for over eight years, including two and a half years after his name was added to the Standby List for an Affirmative Asylum Interview with the Los Angeles Asylum Office, and he has no way to move this application forward.

C. **Defendants' Failure to Comply with Their Statutory Duty to Adjudicate Kia's Asylum Claim Is Causing Continuing Injury and Has Prejudiced Kia by Leaving Him in Legal Limbo for Years.**

34. Kia affirmatively applied for asylum. Defendants' failure to schedule an asylum interview and adjudicate Plaintiff's Asylum Application has been very prejudicial. Plaintiff wants to live safely and build a permanent life in the United States, where he will be free from the persecution and threats that he faced in Iran.

35. Having his Asylum Application unadjudicated makes it impossible for Kia to make long-term plans for the future and leaves him in perpetual fear that he will be forced to return to Iran. Kia, his wife and their son have been effectively cut off from their extended family in Iran for over eight years. Their son, now 13, is developing a more mature understanding of his family situation and is increasingly questioning why he cannot have a close relationship with his grandparents as he cannot leave to country to see them the way his friends do. Both Kia's wife and her mother (Kia's mother-in-law) suffer from depression which is exacerbated by their separation from each other. Because Kia's Asylum Application may never be adjudicated, he cannot give them hope that there is light at the end of the tunnel.

### D. Defendants Violated Their Duty to Schedule Kia's Asylum Interview and Adjudicate His Claim for Asylum.

36. Defendants violated their non-discretionary statutory duty to schedule Plaintiff's asylum interview and adjudicate Plaintiff's claim for asylum without unreasonable delay.

#### 1. Defendants Adopted Their LIFO Policy.

37. In January 2018, USCIS adopted its LIFO policy for scheduling asylum interviews. Under this policy, applicants are divided into three pools. First priority applicants are those being rescheduled for interviews that were previously cancelled by either the applicant or USCIS. Second priority goes to new applications pending 21 days or less. Third priority goes to those in the "asylum backlog[]" who are waiting for interviews, starting with the most recently added applicant and "working back towards older filings."[3]

38. Under the LIFO policy, Defendants have effectively placed Plaintiff's asylum application in an indefinite suspension, such that his claim may never be adjudicated or will not be adjudicated for so many years that Defendants' delay is unreasonable.

#### 2. Many Applicants May Never Receive an Interview Due to the Structure of the Asylum Backlog.

39. Statistics released by USCIS illustrate that it will be nearly impossible for Plaintiff to receive an interview under the LIFO policy. Applicants in the backlog are only scheduled for interviews if all later-filed applications have already received interviews but, based on publicly available information and on information and belief, every month USCIS conducts hundreds to thousands fewer asylum interviews than

---

[3] *Affirmative Asylum Interview Scheduling*, U.S. Citizenship and Immigration Services (updated May 31, 2022), www.uscis.gov/humanitarian/refugees-and-asylum/asylum/affirmative-asylum-interview-scheduling.

the new applications it receives.[4]  Thus, the number of applicants waiting in the backlog increases each month, and applicants such as Plaintiff are not being pulled from the backlog to receive interviews.

40. Human Rights First, a non-partisan international human rights organization, has observed that since the LIFO policy went into effect in 2018, it "has failed to reduce the backlog, essentially freezing those already waiting for interviews while adding new asylum seekers to the backlog each year."[5]  Human Rights First reports that "the human consequences of the backlog are devastating," separating families, causing mental health problems, undercutting pro bono representation, and creating many other problems.

41. According to the American Immigration Lawyers Association, USCIS' LIFO policy "exacerbate[s] the asylum office backlog and leave[s] thousands of legitimate asylum seekers … in legal limbo indefinitely."[6]

42. Defendants created a system where some new applicants are selected to receive an interview immediately and have their claims adjudicated within weeks. Other applicants, such as Plaintiff, have been arbitrarily placed in the backlog indefinitely and, on information and belief, will never receive interviews under USCIS's LIFO policy.

---

[4] In 2022, USCIS received approximately 239,000 I-589 applications for asylum and "completed" approximately 41,100 applications. Annual Statistical Report, FY 2022, U.S. Citizenship and Immigration Services 15 (2022), www.uscis.gov/sites/default/files/document/reports/FY2022_Annual_Statistical_Report.pdf.

[5] Protection Postponed: Asylum Offices Cause Suffering, Separate Families, and Undermine Integration, Human Rights First 1 (2021), https://humanrightsfirst.org/wp-content/uploads/2021/05/Protection_Postponed-1.pdf

[6] Practice Pointer: AILA Frequently Asked Questions (FAQs) on Changes to the Asylum Office Affirmative Scheduling System, American Immigration Lawyers Association 3 (2018), https://www.aila.org/library/aila-provides-faqs-on-changes-to-the-asylum-office.

### 3. Defendants' LIFO Policy Is Unreasonable.

43. Defendants' delay in processing Plaintiff's Asylum Application is unreasonable. USCIS's arbitrary placement of Plaintiff in the asylum backlog, while other applicants are randomly scheduled for near-immediate interviews, renders the delay even more unreasonable. Defendants' adoption of the LIFO policy is more than just a matter of agency prioritization; it violates their duty to carry out the adjudicative and administrative functions delegated to them by law with regard to Plaintiff's Asylum Application.

44. With individuals who filed more recently being prioritized over those who filed earlier in time and the backlog ever-increasing, third-priority applicants like Kia, whose claim has already been pending for over eight years, move further and further away from an interview each month. USCIS acknowledges this problem: "[M]ost interview slots are taken by the first and second priorities, giving little movement to the Third Priority and older cases."[7]

### E. Plaintiff's Injuries Are Redressable.

45. Plaintiff's injuries are redressable. There are myriad potential replacements for, or modifications to, Defendants' LIFO policy that would permit Plaintiff to have his Asylum Application adjudicated within a reasonable timeframe. As an example, Defendants could reinstitute a first-in-first-out ("FIFO") policy, where applications are adjudicated in the order in which they are received. Such a policy would ensure that Plaintiff, and others similarly situated in the backlog, will eventually receive an interview in a reasonable and predictable timeframe.

46. Alternatively, Defendants could allocate a portion of interviews to newly filed cases and allocate a portion of interviews to adjudicating the longest

---

[7] *Annual Report 2020*, Citizen and Immigration Services Ombudsman 48 (2020), https://www.dhs.gov/sites/default/files/publications/20_0630_cisomb-2020-annual-report-to-congress.pdf.

pending cases (thereby ensuring that every applicant would eventually receive an interview in a finite and predictable amount of time).

47. As yet another approach, Defendants could modify LIFO by giving top priority to applicants who have waited four years (or some other definite time), thereby setting an upper bound on how long applicants would need to wait, and otherwise maintain the current scheduling scheme, prioritizing recently filed cases.

48. Each of these examples would give Plaintiff a predictable and foreseeable timeframe in which he would receive an asylum interview, while not requiring any additional resources for Defendants to carry out their duty to adjudicate and still permit Defendants to also give priority to adjudicating a portion of the recently filed cases.

## FIRST CLAIM FOR RELIEF

### (Administrative Procedure Act Violation—Unreasonable Delay)

49. Plaintiff alleges and incorporates by reference all preceding paragraphs.

50. Plaintiff has a statutory right to apply for asylum and to be considered for that relief pursuant to INA § 208(a), 8 U.S.C. § 1158(a). Defendants failed to perform this non-discretionary duty and, under Defendants' LIFO policy, will continue to indefinitely delay or, at a minimum, unreasonably delay performing this duty.

51. Plaintiff has no adequate remedy at law, has suffered injury, and will suffer further irreparable harm if Defendants do not promptly adjudicate his Asylum Application.

52. Under the APA, 5 U.S.C. § 706(1), the Court is authorized to compel agency action which has been unreasonably delayed.

53. Defendants' delay in providing an interview to Plaintiff is unreasonable because:

a. The delay is not governed by a "rule of reason."[8] Defendants' decision to adopt the LIFO policy and, thereby, effectively deny adjudication to older-filed applications represents a failure of reason, just as it would not be reasonable to adopt a policy to schedule interviews on an asylum applicant's 100th birthday, no matter the age of the person when they first applied.

b. Congress has provided a statutory deadline of 45 days to schedule and 180 days for the adjudication of asylum claims. INA § 208(d)(5)(A), 8 U.S.C. § 1158(d)(5)(A). While these deadlines do not create a private right of action, they are factual evidence to support Kia's assertion that Defendants' delay of over eight years, *sixteen times* the statutory deadline, is unreasonable.[9]

c. The delay impacts every aspect of Plaintiff's life, hindering his ability to make plans for his and his family's future.

d. The delay here is especially intolerable because it impacts Plaintiff's and his family's health and welfare, as well as their economic interests. Among the

---

[8] *See, e.g.*, *Vaz v. Neal*, 33 F.4th 1131, 1137 (9th Cir. 2022) ("the time agencies take to make decisions must be governed by a 'rule of reason'"); *Alaska Indus. Dev. & Exp. Auth. v. Biden*, __ F.Supp.3d __, 2023 WL 5021555, at *27 (D. Alaska Aug. 7, 2023) (when determining an "appropriate timeline for agency action, the Ninth Circuit has instructed district courts to follow a standard of reasonableness"); *Wang v. Chertoff*, 676 F.Supp.2d 1086, 1100 (D. Idaho 2009) ("'What constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case.'").

[9] *See, e.g.*, *Islam v. Heinauer*, 32 F.Supp.3d 1063, 1072–73 (N.D. Cal. 2014) (six-year delay in adjudicating I-485 petition unreasonable, especially when "the government has not indicated when or if it will eventually adjudicate" the petition); *Yavari v. Pompeo*, No. 2:19-cv-02524-SVW-JC, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019) (in the Ninth Circuit, district courts "have generally found that immigration delays in excess of five, six, seven years are unreasonable"); *Naji v. Mayorkas*, No. 8:23-cv-00733 HDV ADS, 2023 WL 7097363, at *3 (C.D. Cal. Oct. 25, 2023) ("this Court finds it hard to imagine how a six-year time lapse of complete inactivity by USCIS does not in itself satisfy the TRAC [*Telecommunications Research and Action Center v. F.C.C.*, 750 F.2d 70 (D.C. Cir. 1984)] standard for unreasonable delay—especially in light of the numerous decisions that have found unreasonable delay for much shorter periods").

injuries Plaintiff has suffered are an inability to see and reunite with his family, the pain of seeing his wife unable to visit her own family in Iran and watching his son grow up without a connection to either side of his extended family, and the daily psychological trauma of not knowing if he can build a new life in the United States or if he will be sent back to Iran where he will face a severe risk of persecution. Because Kia and his wife must continue to regularly reapply for Employment Authorization and are legally prohibited from working in the United States if their authorization is delayed, their family is also always at risk of the serious financial consequences of unemployment, including the risk of losing their health insurance coverage and defaulting on their mortgage and losing their home, and the personal stress and uncertainty of not knowing whether they can continue to build fulfilling careers.  In fact, this exact scenario unfolded in 2021 when USCIS failed to timely renew their Employment Authorizations and Kia's wife lost a treasured job because she was not authorized to work.

   e. Expediting the delayed adjudication would not impact Defendant agency USCIS's other priorities.  Plaintiff does not ask USCIS to devote greater capacity to adjudicating asylum claims; rather, Plaintiff asks the agency to use its existing capacity to adjudicate Plaintiff's Asylum Application in turn.

   f. As discussed in Section E above, addressing redressability, there is a wide range of policies Defendants could use to both provide Plaintiff an interview in a reasonable timeframe and maintain an asylum scheduling system addressing the policy objectives underpinning LIFO.

   g. Finally, Defendants' decision to adopt a LIFO policy was arbitrary and capricious, and has had a disparate impact on Plaintiff's ability to obtain an adjudication of his Asylum Application in contrast to those whose applications have randomly received priority treatment.  Defendants' LIFO policy is no less arbitrary and capricious than adopting a scheduling system where half of the applicants are

randomly selected to be scheduled for interviews right away and the other half of the applicants must wait 25 years.

54. Having diligently followed the procedures set forth by Defendants and exhausted all administrative remedies, Plaintiff seeks a court order compelling Defendants to schedule and adjudicate his Asylum Application pursuant to 5 U.S.C. § 706(1).

## SECOND CLAIM FOR RELIEF

### (Administrative Procedure Act—Exceeds Statutory Authority)

55. Plaintiff alleges and incorporates by reference all preceding paragraphs.

56. Under the APA, courts must "hold unlawful and set aside agency action" that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C). Defendants may only exercise authority conferred by statute. *City of Arlington v. FCC*, 569 U.S. 290, 297-98 (2013).

57. Defendants' LIFO policy exceeds Defendants' statutory authority because it violates Plaintiff's statutory right to apply for asylum and to be considered for that relief pursuant to INA § 208(a), 8 U.S.C. § 1158(a), and the APA's requirement that Defendants' discharge this duty without unreasonable delay.

58. Defendants' LIFO policy is therefore "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," in violation of the APA. 5 U.S.C. § 706(2)(C).

59. Defendants' violation has harmed and continues to harm to Plaintiff and his family.

## THIRD CLAIM FOR RELIEF

### (Administrative Procedure Act—Not in Accordance with Law)

60. Plaintiff alleges and incorporates by reference all preceding paragraphs.

61. Under the APA, a court must set "aside agency action" that is "not in accordance with law." 5 U.S.C. § 706(2)(A). Defendants' LIFO policy exceeds Defendants' statutory authority because it violates Plaintiff's statutory right to apply

for asylum and to be considered for that relief pursuant to INA § 208(a), 8 U.S.C. § 1158(a) and the APA's requirement that Defendants' discharge this duty without unreasonable delay.

62. Defendants' LIFO policy is therefore "not in accordance with law" as required by the APA. 5 U.S.C. § 706(2)(A).

63. Defendants' violation has harmed and continues to harm Plaintiff.

### FOURTH CLAIM FOR RELIEF

### (Administrative Procedure Act—Arbitrary and Capricious)

64. Plaintiff alleges and incorporates by reference all preceding paragraphs.

65. The APA provides that courts must "hold unlawful and set aside" agency action that is "arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. § 706(2)(A).

66. Defendants' LIFO policy is arbitrary and capricious because it is effectively a lottery where some applicants arbitrarily receive an interview immediately and have their claims adjudicated within weeks. Others, such as Plaintiff, are arbitrarily placed in the asylum backlog indefinitely and, on information and belief, will not ever receive interviews under USCIS procedures. According to the American Immigration Lawyers Association, USCIS' policy "exacerbate[s] the asylum office backlog and leave[s] thousands of legitimate asylum seekers ... in legal limbo indefinitely."[10]

67. Defendants' LIFO policy is therefore "arbitrary, capricious, [or] an abuse of discretion" in violation of the APA. 5 U.S.C. § 706(2)(A).

68. Defendants' violation has harmed and continues to harm Plaintiff.

---

[10] Practice Pointer: AILA Frequently Asked Questions (FAQs) on Changes to the Asylum Office Affirmative Scheduling System, American Immigration Lawyers Association 3 (2018), https://www.aila.org/library/aila-provides-faqs-on-changes-to-the-asylum-office.

## COUNT FIVE

### (Mandamus)

69. Plaintiff alleges and incorporates by reference all preceding paragraphs.

70. Plaintiff has a statutory right to apply for asylum and to be considered for that relief pursuant to the INA. INA § 208(a), 8 U.S.C. § 1158(a).

71. Under the Mandamus Act, 28 U.S.C. § 1361, relief may be granted because Defendants owe Plaintiff a non-discretionary statutory duty to adjudicate Plaintiff's Asylum Application and Plaintiff has exhausted all other avenues of relief to obtain such adjudication.

72. Though USCIS has discretion in granting or denying applications, it has no discretion to decline to schedule interviews and to fail to adjudicate Plaintiff's Asylum Application within a timeframe that is not unreasonably delayed.

73. Aside from claims brought under the APA, *supra*, Plaintiff has no adequate remedy at law, and will suffer irreparable harm if his Asylum Application is not promptly adjudicated.

74. Having diligently followed the procedures set forth by Defendants and exhausted all administrative remedies, Plaintiff seeks a writ of mandamus or in the nature of mandamus to end Defendants' unreasonable delay and refusal to adjudicate his Asylum Application.

### REQUEST FOR JURY TRIAL

75. Plaintiff requests a jury trial with respect to all claims so triable.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court to:

76. Accept jurisdiction and maintain continuing jurisdiction of this action;

77. Declare Defendants' actions in this matter, including failing to schedule Plaintiff for an asylum interview in order to adjudicate Plaintiff's application, a failure to comply with their statutory duty, an abuse of discretion, and not in

accordance with the law pursuant to 5 U.S.C. § 706(1), (2)(C), and 28 U.S.C. §§ 2201, 2202;

78. Declare that Defendants' LIFO policy is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law within the meaning of 5 U.S.C. § 706(2)(A);

79. Issue a preliminary and permanent injunction pursuant to 28 U.S.C. § 1361 and 5 U.S.C. § 706(1) compelling Defendants to schedule an asylum interview and make a determination on Plaintiff's Asylum Application without further delay;

80. Issue a writ of mandamus or in the nature of mandamus, pursuant to 28 U.S.C. §§ 1361, 1651, and/or 5 U.S.C. § 706(1), compelling Defendants to schedule an asylum interview and make a determination on Plaintiff's Asylum Application without further delay;

81. Grant attorneys' fees and costs of this suit under the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412(b), *et seq.*; and

82. Grant such other relief as the Court deems necessary and proper.

Dated: February 9, 2024  MANATT, PHELPS & PHILLIPS, LLP

By: /s/ Sirena P. Castillo
Sirena P. Castillo
Patrice Ruane
Attorneys for *Plaintiff*
ALI KIA